Carly M. Roman (SBN 349895)
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
croman@straussborrelli.com

*Attorney for Plaintiff and Putative Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **EDWARD J. KOELLER**, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**TD SYNNEX CORPORATION**,<br><br>Defendant. | No.<br><br>CLASS ACTION COMPLAINT<br><br><u>JURY TRIAL DEMANDED</u> |

## CLASS ACTION COMPLAINT

1. Edward J. Koeller ("Plaintiff"), through his attorneys, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant TD Synnex Corporation ("TD Synnex" or "Defendant").

2. This class action arises from Defendant's persistent disregard for federal law—specifically, the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

3. Defendant uses unlawful and invasive telemarketing tactics to drum up business. Defendant flooded Plaintiff with invasive telemarketing solicitations in clear violation of the TCPA.

4. Now, Plaintiff brings this class action on behalf of himself, and all others harassed by Defendant and its unlawful telemarketing tactics.

## PARTIES

5. Plaintiff, Edward J. Koeller, is a natural person and a citizen of Missouri. He is domiciled in Missouri (where he intends to remain).

6. Defendant, TD Synnex, is a corporation incorporated in California and with its principal place of business in Fremont, California.

## JURISDICTION AND VENUE

7. This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the TCPA, 47 U.S.C. § 227.

8. This Court has personal jurisdiction over Defendant because it is headquartered in California, regularly conducts business in California, and has sufficient minimum contacts in California.

9. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## BACKGROUND

### *The Telephone Consumer Protection Act*

10. Congress enacted the Telephone Consumer Protection Act ("TCPA") to combat "the proliferation of intrusive, nuisance calls to consumers and businesses from telemarketers." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 399 (2021) (internal quotation omitted).

11. "The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of

the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

12. As used herein, "TCPA" refers to both the federal statute 47 U.S.C. § 227 *et seq.* and its implementing regulations 47 C.F.R. § 64.1200 *et seq.*

13. The TCPA establishes a "private right of action" whereby persons can seek both injunctive and monetary relief. 47 U.S.C. §§ 227(c)(5).

14. For damages, the TCPA provides "$500 in damages for each such violation[.]" 47 U.S.C. §§ 227(b)(3), (c)(5). However, the TCPA provides treble damages of $1,500 for each "willful" or "knowing" violation. *Id*.

15. Telemarketing is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to a person." 47 C.F.R. § 64.1200(f)(13).

16. The term "telephone solicitation" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services[.]" 47 C.F.R. § 64.1200(f)(15).

17. The TCPA prohibits calling any "residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. §§ 64.1200(c)(2). Notably, "[s]uch do-not-call registrations must be honored indefinitely[.]" *Id*.

18. For such violations, the TCPA provides a private right of action for any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection[.]" 47 U.S.C. § 227(c)(5).

### *Plaintiff Edward J. Koeller*

19. Plaintiff is an individual and a "person" under the meaning of 47 U.S.C. § 153(39).

20. Plaintiff's residential telephone number is (314) 602-XXXX (the "telephone number").

21. Plaintiff's telephone number has been listed on the National Do-Not-Call Registry since August 2007. Since then, Plaintiff has not removed his telephone number from the National Do-Not-Call Registry.

22. Additionally, Plaintiff's telephone number has been on the Missouri No-Call List since January 1, 2013.

23. Plaintiff uses his telephone number for personal, residential, and household purposes (such as calling friends, family, and scheduling personal appointments).

24. Plaintiff's phone account is part of a shared family plan.and is not used for business.

25. Plaintiff does not use his telephone number for business purposes.

26. Plaintiff previously received a monthly stipend from his employer to cover a portion of his phone plan. Plaintiff has not received any employer stipend for phone use since August 2024—long before Defendant's calls.

27. Plaintiff has not associated his telephone number with any business.

28. Plaintiff is not a current or former customer of Defendant.

29. Plaintiff has never had a business relationship with Defendant.

30. Plaintiff never provided his telephone number to Defendant.

31. Plaintiff has never consented to receive the alleged telephone solicitations from Defendant.

### ***Defendant Engages in Telemarketing***

32. Defendant is a global distributor and seller of cybersecurity products and services, including endpoint security solutions, which it markets and offers for sale through outbound sales efforts. The calls to Plaintiff were made as part of Defendant's efforts to generate sales of those products and services.

33. According to its website, TD Synnex "connects the technology ecosystem and unlocks business potential" by aggregating and distributing a broad portfolio of technology products, services, and solutions to its partners, and by helping them manage transformation and execute with confidence in a rapidly evolving IT marketplace.[1]

34. Simply put, Defendant sells and markets technology products and technology-related services, including hardware, software, cloud subscriptions, licensing, financing, and IT solutions.

35. Notably, in Defendant's industry, telemarketing is a widespread and standard practice.[2] Indeed, the Bureau of Labor Statistics has reported that the "Computing Infrastructure Providers, Data Processing, Web Hosting, and Related Services" industry has one of the highest levels of telemarketing.[3]

36. To sell and promote its products and services, Defendant—either directly or through third-party vendors, agents, or marketing partners—engages in outbound telemarketing campaigns, including telephone calls to consumers and businesses.

37. Defendant has already received numerous complaints about its unlawful telemarketing practices.

### ***Defendant Violated the TCPA***

38. As explained below, Defendant violated the TCPA numerous times.

39. Plaintiff received calls from TD Synnex on at least January 21, 30 and February 3, 2026.

40. The caller identified themselves as calling from "TD Synnex" on all calls.

41. On all calls, Defendant's representative sought to solicit the Plaintiff to purchase TD Synnex's endpoint security offerings.

42. Plaintiff was not interested in the Defendant's services or products.

---

[1] *About Us*, TD SYNNEX, https://www.tdsynnex.com/us/en/about-us.html (last visited February 4, 2026).
[2] *Occupational Employment and Wage Statistics: Telemarketers*, U.S. CENSUS BUREAU (May 2023) https://www.bls.gov/oes/2023/may/oes419041.htm.
[3] *Id.*

43. During the first call, Plaintiff informed Defendant's representative "Angel" they were calling a personal number. Plaintiff also informed the Defendant's representative that his telephone number is on the National Do Not Call Registry, and instructed Defendant's representative not to call him again.

44. Despite this, Plaintiff received a second call on January 30, 2026, offering the same services from the Defendant.

45. At the start of the second call, "Angel" (the same individual from the first call) from TD Synnex proceeded to try to sell Plaintiff Defendant's services and products.

46. Again, Plaintiff also informed the Defendant's representative that his telephone number is on the National Do Not Call Registry.

47. Despite this, Plaintiff received the third call on February 3, 2026, offering the same services from the Defendant.

48. This time "Connor" (or something that sounded similar) from TD Synnex proceeded to try to sell Plaintiff Defendant's services and products.

49. Again, Plaintiff also informed the Defendant's representative that his telephone number is on the National Do Not Call Registry.

50. On each call, Defendant's representative contacted Plaintiff for the commercial purpose of encouraging the purchase of TD Synnex's cybersecurity goods and services, including endpoint security products, and attempted to market, promote, and sell those offerings to Plaintiff.

51. The aforementioned telephone solicitations to Plaintiff were unwanted, nonconsensual encounters, as Plaintiff never provided his consent or requested the calls.

52. Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendant because their privacy has been violated and they were annoyed and harassed.

53. On information and belief, Defendant will continue to place numerous telephonic solicitations to Plaintiff and Class Members.

**CLASS ACTION ALLEGATIONS**

54. Plaintiff brings this class action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of the following:

> **National Do-Not-Call Registry Class**: All persons in the United States (1) whose telephone numbers were on the National Do-Not-Call Registry for at least 31 days (2) but then received two or more telephone calls from, or on behalf of, Defendant (3) during a 12-month period and (4) within four years prior to the commencement of this litigation and up until the date of trial.

55. Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

56. Plaintiff reserves the right to amend the class definition.

57. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

58. **Ascertainability**. All members of the proposed Class are readily ascertainable from information in Defendant's custody and control. Specifically, all members of the proposed Class can be ascertained through analysis of Defendant's phone records.

59. **Numerosity**. The Class Members are so numerous that joinder of all Class Members is impracticable. Upon information and belief, the proposed Class includes at least several thousand members. After all, telemarketing campaigns necessarily involve communication with large groups of people.

60. **Typicality**. Plaintiff's claims are typical of those of Class Members because all such claims arise from Defendant's unlawful telemarking practices.

61. **Adequacy**. Plaintiff will fairly and adequately protect the proposed Class's common interests. His interests do not conflict with Class Members' interests. And Plaintiff's counsel has substantial experience in complex class action litigation and an expertise in TCPA litigation.

62. **Commonality and Predominance**. Plaintiff's and the Class's claims raise predominantly common fact and legal questions—which predominate over any questions affecting individual Class Members—for which a class wide proceeding can answer for all Class Members. In fact, a class wide proceeding is necessary to answer, *inter alia*:

    a.    whether Defendant violated the TCPA;

    b.    whether Defendant violated the TCPA willfully and knowingly;

    c.    whether Plaintiff is entitled to statutory damages;

    d.    whether Plaintiff is entitled to treble damages;

    e.    whether Defendant should be enjoined from further TCPA violations.

63. **Superiority**. A class action will provide substantial benefits and is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class Members are relatively small compared to the burden and expense that individual litigation against Defendant would require. Thus, it would be practically impossible for Class Members, on an individual basis, to obtain effective redress for their injuries. Not only would individualized litigation increase the delay and expense to all parties and the courts, but individualized litigation would also create the danger of inconsistent or contradictory judgments arising from the same set of facts. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale, provides comprehensive supervision by a single court, and presents no unusual management difficulties.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**Violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)**
**(On Behalf of Plaintiff and the National Do-Not-Call Registry Class)**

64. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

65. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, by making telemarketing solicitations, except for emergency purposes, to the Plaintiff and the National Do-Not-Call Class despite their numbers being on the National Do-Not-Call Registry.

66. Defendant violated the TCPA willfully or knowingly.

67. Plaintiff and National Do-Not-Call Class Members seek statutory damages of $500 (or $1,500) for each unlawful telephone call.

68. Plaintiff and National Do-Not-Call Class Members seek injunctive relief prohibiting Defendant from making further unlawful telephonic solicitations to Plaintiff and National Do-Not-Call Class Members.

**PRAYER FOR RELIEF**

Plaintiff and Class Members respectfully request judgment against Defendant and that the Court enter an order:

A. Certifying this case as a class action on behalf of Plaintiff and the Class, appointing Plaintiff as class representative, and appointing his counsel to represent the Class;

B. Awarding statutory damages to Plaintiff and Class Members;

C. Providing the injunctive relief requested herein; and

D. Granting such other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial for all claims so triable.

Date: February 4, 2026

Respectfully submitted,

*/s/ Carly M. Roman*
Carly M. Roman (SBN 349895)
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
croman@straussborrelli.com

*Attorney for Plaintiff and Putative Class*